IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORDAN BROWN,
          Petitioner

          -V-

MORRIS HOUSER, SUPERINTENDENT
SCI BENNER TOWNSHIP,
          Respondent

:
:
:
:
:
:
:     No. 3:22-cv-1301
:
:
:
:
:
:

PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254
AND
CONSOLIDATED INITIAL MEMORANDUM OF LAW

     AND NOW, comes the Petitioner, Jordan Brown pro se, who pursuant to 28 U.S.C. § 2254 files this Petition for Writ of Habeas Corpus and Memorandum of Law, respectfully avers as follows:

I.     PARTIES

1.     The Petitioner, Jordan Brown, ("Petitioner/Brown") is a prisoner in the custody of the Pennsylvania Department of Corrections. He is currently incarcerated at the State Correctional Institution at Benner Township in Bellefonte, PA under inmate number MU 2046.

2.     Morris Houser is the Superintendent at Benner Township and as such, has the immediate control over Brown's custody.

3.     Morris Houser is represented by the Commonwealth. In particular, the Huntingdon County District Attorney's Office.

II.   FACTUAL AND PROCEDURAL HISTORY

4.   On November 28, 2015, in the County of Huntingdon, among other things, Brown was charged with Criminal Attempt to Commit Manslaughter of a Law Enforcement Officer under 18 Pa. C.S. § 901, 2507(c)(1)(ii); 2 Counts of Aggravated Assault under 18 Pa. C.S. § 2702(a)(2)/(a)(3); and Arson under 18 Pa. C.S. § 3301(a)(1)(i)/(c)(1). An additional Count of Assault of a Law Enforcement Officer was added by Information on January 25, 2016. See, CP-31-CR-577-2015.

5.   The charges arose from an incident in which Brown was suicidal, set fire within his residence and discharged his firearm out of the window of the residence twice as the State Police arrived on the scene.

6.   After a series of plea negotiations, Brown entered a guilty plea on September 2, 2016 to the following offenses: Criminal Attempt to Commit Manslaughter of a Law Enforcement Officer in the First Degree under 18 Pa. C.S. §§ 901, 2507(c)(1)(ii); Arson under 18 Pa. C.S. § 3301(a)(1)(ii); and Recklessly Endangering Another Person, 18 Pa. C.S. § 2705.

7.   The terms of the contract called for a minimum sentence that would be capped at $18\frac{1}{2}$ years. During the guilty plea proceedings, there was no reference made to fines being a part of the agreement. In addition, the written plea colloquy was void of this requirement. See, N.T. 9/2/16, Guilty Plea Colloquy dated 9/2/16.

8.   The state court accepted Brown's plea and pending the conclusion of a pre-sentence investigation ("PSI"), sentencing was deferred until "November 10th - December 1st." N.T. 9/2/16 at 10.

9.     On November 7, 2016, Brown filed a motion to withdraw his plea and a hearing was held on November 15, 2016. At the motion to withdraw hearing Brown unequivocally stated that "just pleading to it, that not doing it." N.T. 11/15/16 at 4. In other words, because he pleaded guilty to the charge of "Attempt to Commit Manslaughter..." it does not mean he did it. Ultimately, Brown reiterated that he "don't want to plead to that because it's not honestly what I was trying to do." Id, at 4. In addition, Brown stated that he "won't feel right accepting because that's not what I did intentionally or attempted to do." Id. at 5.

10.    Along this line the Commonwealth indicated that it "sounds like [Brown] is now claiming he is asserting his innocence or he doesn't want to plead to something that he doesn't think he intended to do." Id. at 6.

11.    In spite of Brown's clear assertion of innocence, on November 15, 2016, the state court denied this presentecing request. See, T.C.O. dated 11/15/16.

12.    On December 1, 2016, Brown appeared before the state court for sentencing. At sentencing, the state court placed the following sentencing guideline ranges in this case: 96-114 months for the attempted manslaughter charge, 30-42 months for the charge of arson - no guideline was mentioned for the reckless endangering charge. See, N.T. 12/1/16 at 1-2.

13.    At this time, Brown was represented by Nicholas Newfield, Esquire ("Attorney Newfield"). When asked by the state court if there were any "additions or corrections to the pre-sentence investigation," Attorney Newfield indicated that he "did not know any corrections or errors that needed to be made." Id. at 2.

14.    On December 1, 2016, the state court imposed a sentence of 10 to 20 years for the attempted manslaughter charge and a fine of $1,000.00, 8 to 16 years for the arson charge plus a fine of $500.00 and a fine of $200.00 for the reckless endangering charge. The sentences were imposed consecutively and therefore, amounted to 18 to 36 years plus $1,700.00 in fines.

15.    On December 9, 2016, Brown filed timely post-sentence motions and on April 10, 2017 said motions were denied. On April 27, 2017, Brown filed a timely notice of appeal and on November 30, 2017, the Superior Court affirmed the judgment of sentence. See, Commonwealth v. Brown, 719 MDA 2017.

16.    Thereafter, Brown sought review by the State Supreme Court. On October 11, 2018, the State Supreme Court denied review. See, Commonwealth v. Brown, 368 MAL 2018.

17.    On October 9, 2019, Lance T. Marshall, Esq. ("Attorney Marshall") filed a Petition for Post-Conviction Relief ("PCRA") and a hearing was scheduled for December 10, 2019. However, Brown retained Helen Stolinas, Esq. ("Attorney Stolinas") and an amended petition was filed on December 23, 2019.

18.    After the state court conducted an evidentiary hearing, on January 22, 2021 the court issued an Opinion & Order denying collateral relief.

19.    On February 19, 2021, Brown filed a timely notice of appeal and on March 16, 2022, the Superior Court affirmed the judgment of sentence. See Commonwealth v. Brown, 242 MDA 2021. Brown sought a reconsideration and on or about May 26, 2022, the Superior Court denied relief. Id. Brown did not

seek review by the State Supreme Court.


III.  THIS PETITION IS TIMELY UNDER THE ANTI TERRORISM AND EFFECTIVE DEATH
      PENALTY ACT ("AEDPA")

20.   28 U.S.C. § 2244(d)(1) imposes a one-year limitations period for the
filing of a petition. In applicable part, the one-year commences at the
conclusion of direct review "or the expiration of the time for seeking such
review."

21.   Brown's direct appeal was decided by the Superior Court on November
30, 2017. Leave to appeal was sought and denied on October 11, 2018. See,
Commonwealth v. Brown, 368 MAL 2018. Thus, the "expiration of the time for
seeking such review" expired 90 days hence, on January 11, 2019, when
Brown's time to seek certiorari review in the United States Supreme Court
expired without such review being sought.

22.   The AEDPA limitations period is tolled by a properly filed state
post-conviction petition 28 U.S.C. § 2244(d)(2), which Brown filed on
October 9, 2019. At the time when he properly filed his PCRA petition,
Brown had 92 days to file this instant petition.

23.   The limitations period continued to be tolled until June 26, 2022,
when the expiration of the time to seek review by the State Supreme Court
concluded. Thus, the AEDPA limitations period expires on September 28,
2022. This petition has been filed before September 28, 2022 and is timely.


STATEMENT REGARDING EXHAUSTION AND DEFAULT

24.   Each claim for relief contained in this petition was fairly presented
to the Pennsylvania courts, or else exhaustion is excused, or was or

remains futile. The point at which each claim was presented is discussed in the body of each claim.

25.    Some of the claims, or portions thereof, were not presented to the state courts because of the ineffective failure of initial state post-conviction counsel to do so. In those cases, Brown can overcome any procedural bar due to state post-conviction counsel's ineffectiveness. Since procedural bars are an affirmative defense that must be raised by the State or waived, Brown will not anticipate which bars, if any, will be raised by the State. Accordingly, any such bar arguments will be addressed in a reply to the State's answer.

## ALLEGATIONS REGARDING THE AEDPA

26.    Under the AEDPA, a writ of habeas corpus may be granted if Brown establishes that he has suffered a violation of his rights under the United States Constitution and the state court decision addressing each said violation:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).

27.    For each claim for relief discussed herein, Brown alleges that the terms of § 2254(d)(1) and/or (2) are satisfied-that the relevant state court decisions were contrary to and/or were unreasonable applications of clearly established Federal law, as determined by the Supreme Court of the United States, or were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

IV.   GROUNDS FOR RELIEF

GROUND ONE

THE STATE COURT'S DETERMINATIONS REGARDING PLEA AND POST-SENTENCING COUNSEL'S FAILURES TO OBJECT AND/OR CHALLENGE THE STATE COURT'S ERRONEOUS CALCULATION OF BROWN'S PRIOR RECORD SCORE BEFORE IT IMPOSED A DISCRETIONARY SENTENCE WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.

28.   Pursuant to Strickland v. Washington, 466 U.S. 668 (1984), Brown is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, counsel's deficient performance prejudiced the defense. Strickland, 466 at 687.

29.   The right to counsel protects more than just trial verdicts. It also protects plea bargaining, in part because poor bargaining can lead to heavier sentences. Lafler v. Cooper, 566 U.S. 156, 163-166 (2012). And it protects sentencing because "any amount of [additional] jail time has Sixth Amendment significance." Lafler, 566 U.S. at 165 (quoting Glover v. United States, 531 U.S. 198, 203 (2001)). Indeed, "[t]o a prisoner," the prospect of additional "time behind bars is not some theoretical or mathematical concept." Barber v. Thomas, 560 U.S. 474, 504 (2010).

30.   In Molina-Martinez v. United States, 136 S. Ct. 1338 (2016) the Supreme Court recognized that "[w]hen a defendant is sentenced under an incorrect guideline range-whether or not the defendant's ultimate sentence falls within the correct range-the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."

31.    In Commonwealth v. Dalberto, 648 A.2d 16 (Pa. Super. 1994), the Superior Court discussed the difference between an "open plea" and a "negotiated plea." Therein, the defendant entered an open plea with some restrictions as two (2) of the counts were to run consecutive while the rest would run concurrently. Accordingly, the Dalberto Court classified the defendant's plea as "hybrid." In other words, as long as the court did not exceed the agreed upon terms, the sentence to be imposed was discretionary. Most importantly, the discretionary aspects of the sentence were subject to appellate review notwithstanding the agreement.

32.    The instant case contains a hybrid plea agreement-one which involves a "capped" minimum and maximum sentence. Accordingly, the agreement was capped at a minimum of 18 years with a maximum of 36 years. Nevertheless, the state court could have imposed a lesser sentence if it elected to do so. In spite of this fact, with a incorrect guideline, the state court imposed a sentence of 18 to 36 years on December 6, 2016.

33.    In disposing of this claim, the state court readily admits that Brown's "prior record score was miscalculated, and that it should have been a 2, rather that the 3 shown on the sentencing worksheets." T.C.O. dated 1/22/21 at 40. This is significant because Brown's prior record score is the number which dictates the correct guideline range. Had the state court utilized a prior record score of 2, the correct sentencing guidelines would be as follows:

  A) Criminal Attempt to Commit Manslaughter of a Law Enforcement Officer

    a) 72-90 months in the standard range without the application of the deadly weapon used enhancement; (+/- 12 months in the aggraveted/ mitigated ranges)

        b) 90-108 months in the standard range with the application of the deadly weapon used enhancement (+/- 12 months in the aggravated/mitigated ranges)

   B) <u>Arson Charge</u>

        a) 24-36 months (+/- 12 months in the aggravated/mitigated ranges).

34.    Contrary to the above ranges, the state court announced the following as the standard guideline ranges for the aforementioned: 96-114 months for the attempted manslaughter, 30-42 months for the arson charge. These guidelines used at sentencing are equivalent to those for an individual with a prior record score of three (3), as opposed to a two (2). See, <u>204 Pa. Code 303.16/303.17</u>.

35.    To justify its miscalculations and from a hindsight prospective, the state court indicated that it "made clear on the record that its sentence was not based on some mathematical formula that expanded upon the sentencing guidelines. Rather, because of the severity of the aggravating factors present and the need for the protection of the public, the court determined that a sentence consistent with the cap agreed to between [Brown] and the Commonwealth was appropriate." <u>T.C.O. dated 1/22/21 at 41</u>. According to the Superior Court, Brown could not establish prejudice. <u>Commonwealth v. Brown</u>, 242 MDA 2021 at 23.

36.    A state court's fact-finding may qualify as unreasonable where "the state court ... had before it, and apparently ignored" evidence supporting the habeas petitioner's claim. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 346 (2003). Here, the state court totally ignored and/or disregarded the significance of utilizing the proper prior record score-a score which would have reduced the sentencing guidelines applicable to Brown. See,

Commonwealth v. Dotzman, 588 A.2d 1312, 1317 (Pa. Super. 1991)("The court's discretion comes into play ... only after it has determined the proper sentencing guideline range"). While the guidelines are advisory and nonbinding, a sentencing court must ascertain the correct guideline ranges before a departure is in order. Commonwealth v. Archer, 722 A.2d 203, 210 (Pa. Super. 1998).

37.  It is undisputed that the state court did not ascertain the correct guideline ranges before it sentenced Mr. Brown. As the state court failed to do so, the court's determinations are contrary to Booker. See, United States v. Booker, 543 U.S. 220, 264 (2005)(while a court may depart from the guidelines, beforehand, it "must consult [them] and take them into account when sentencing") as such provides "certainty and fairness in sentencing"). In addition, the state court's determinations are contrary to Rosales-Mireles. See, Rosales-Mireles v. United States, 138 S. Ct. 1897 (2018)(holding that, the defendant who pleaded guilty to illegal reentry, and who was erroneously sentenced to a presentence report which mistakenly counted a state misdemeanor conviction twice, resulting in a guideline range of 77 to 96 months when the correctly calculated range was 70 to 87 months, was entitled to resentencing).

38.  In Moore, the Third Circuit Court of Appeals held that, "when the information included in a presentence report, on which a sentence is founded at least in part, is unreliable, due process requires that a defendant be resentenced." Moore v. United States, 571 F.2d 179, 183 (3d Cir. 1978); see also, Townsend v. Burke, 334 U.S. 736, 741 (1948)(declaring that when a prisoner is sentenced based on assumptions that are "materially untrue, [s]uch a result, whether caused by carelessness or design, is

inconsistent with due process of law, and ... cannot stand").

39.   In order to demonstrate prejudice, Brown must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687. As the Supreme Court stated in <u>Molina-martinez</u>, "[w]hen a defendant is sentenced under an incorrect Guidelines range-whether or not the defendant's ultimate sentence falls within the correct range-the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." <u>Molina-Martinez</u>, 136 S. Ct. 1338 (2016).

40.   The Superior Court's prejudice assessment is contrary to <u>Molina-Martinez</u>. Accordingly, Brown is entitled to habeas corpus relief. <u>Richardson v. Superintendent Coal Twp. SCI</u>, 905 F.3d 750 (3d Cir. 2018).

<u>GROUND TWO</u>

THE STATE COURT'S DETERMINATIONS REGARDING PLEA COUNSEL'S FAILURE TO OBJECT WHEN PETITIONER PLED GUILTY TO A NON VIABLE OFFENSE WAS CONTRARY TO AND/OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AND WAS BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING.

41.   The Sixth Amendment guarantees a defendant the effective assistance of counsel at "critical stages of a criminal proceeding" which includes the entry of a guilty plea. <u>Lafler v. Cooper</u>, 566 U.S. 156, 165 (2012). "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." <u>Boykin v. Alabama</u>, 395 U.S. 238, 245 n.5 (1969). A plea cannot be knowing and

voluntary unless the defendant received "real notice of the true nature of the charges against him, the first most universally recognized requirement of due process." Henderson v. Morgan, 426 U.S. 637, 645 (1976).

42. In the state court proceedings, Brown alleged that attempted manslaughter of a law enforcement officer under 18 Pa. C.S. § 2507(c)(1)(ii) was not a viable offense because the statute references negligently or accidentally killing the victim.

43. In denying this claim the state courts explained that negligent or accidental killing refers to transferred intent. See, Commonwealth v. Brown, 242 MDA 2021 at 11-14.

44. However, the very definition the court gave during the plea hearing is not an accurate recitation of the law because it included the phrase "but the person negligently or accidentally attempted to cause the death of a victim." Boykin, supra. See e.g., Bey v. Superintendent Greene SCI, 856 F.3d 230, 238 (3d Cir. 2017)("Generally, trial counsel's stewardship is constitutionally deficient if he or she neglect[s] to suggest instructions that represent the law...").

45. In correlation, under 18 Pa. C.S. § 901, the offense of attempt requires specific intent plus a substantial step towards the commission of the crime-a fact that is totally inconsistent with "negligently or accidentally attempted to cause the death of a victim."

46. Consequently, counsel was ineffective in advising Brown to enter a plea to a charge which does not exist under the law and which was not viable as the state court defined during the plea colloquy. Since the state

court provided an inaccurate definition of the crime for which Brown pleaded guilty to, it cannot be said that Brown's plea was voluntary and intelligently knowing.

47.    In Commonwealth v. Flanagan, 854 A.2d 489 (Pa. 2004), the State Supreme Court encountered a similar issue with respect to a deficient plea colloquy. In that case, the court accepted a plea but failed to elicit a factual basis for the plea. Moreover, the court gave an incorrect explanation of accomplice liability which caused the defendant to agree to a materially erroneous understanding of the criminal liability in his case. Based on the aforementioned, the plea was found to be unknowing and permitted the defendant to withdraw his plea and proceed to trial.

48.    Accordingly, there was no reasonable basis for plea counsel's failure to object to the plea colloquy or the definition of the charge as provided or to advise his client to enter a plea to an offense that is not viable under the law. See, Commonwealth v. Hickman, 799 A.2d 136, 141 (Pa. Super. 2002)(holding that, "counsel's advice was legally unsound and devoid of any reasonable basis designed to effectuate [the client's] interests" because counsel ineffectively advised the defendant to accept a plea where he would be eligible for boot camp when the defendant was statutorily ineligible for that program).

49.    Based on the above, the state court's determinations conflict with Lafler, Boykin and Henderson. Brown is entitled to habeas relief. United States v. Bui, 769 F.3d 831 (3d Cir. 2014).

GROUND THREE

PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE IN THE INITIAL COLLATERAL REVIEW PETITION THAT PLEA, POST-SENTENCING AND/OR DIRECT REVIEW COUNSEL WERE INEFFECTIVE FOR FAILING TO RAISE ON DIRECT REVIEW THAT THE STATE COURT ERRED WHEN IT DENIED PETITIONER'S PRE-SENTENCE REQUEST TO WITHDRAW HIS GUILTY PLEA.

50.    Two different standards exist for reviewing requests to withdraw a

guilty plea, one for pre-sentence requests to withdraw and one for post-

sentence requests to withdraw. In Commonwealth v. Forbes, 299 A.2d 268 (Pa.

1973), the State Supreme Court set forth the standard for determining when,

as first presented in the state court, a request to withdraw a guilty plea

made prior to sentencing should be granted. The Court began by stating

that, "although there is no absolute right to withdraw a guilty plea,

properly received by the trial court, it is clear that a request made

before the sentencing ... should be liberally allowed." Forbes, 299 A.2d at

271. Since the entry of the plea involves the waiver of so many

constitutional rights, a request to withdraw prior to sentencing must be

liberally allowed. Commonwealth v. McLaughlin, 366 A.2d 238 (Pa. 1976).

51.    The standard set forth in Forbes was upheld by the State Supreme

Court in Commonwealth v. Randolph, 718 A.2d 1242 (Pa. 1998). In Randolph,

the defendant confessed to police about his participation in several

burglaries. Prior to sentencing, Randolph informed the court that he

wished to withdraw his guilty plea. Randolph indicated that he was under

duress at the time of his confession and that while he committed some of

the burglaries, several of the burglaries that he confessed to he did not

do. In spite of this pre-sentence request, the lower court denied

Randolph's request. On appeal, the State Supreme Court reversed the lower

court's holding that, while the colloquy was sufficient, the defendant's assertion that he pled guilty under duress was sufficient to satisfy the liberal standard pronounced in Forbes. In addition, a "fair and just reason" existed which was the clear assertion of innocence since Randolph had asserted guilt to several crimes he did not commit. Forbes, 299 A.2d at 272 (interpreting statement "I don't want to plead guilty to nothing I didn't do" as an "assertion of innocence").

52.   Conversely, post-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. Therefore, a showing of manifest injustice is required to withdraw guilty pleas after imposition of sentence. Commonwealth v. Gunter, 771 A.2d 767 (Pa. 2001).

53.   The facts for this claim are as follows, on September 2, 2016, Brown appeared in court and entered a plea of guilt. However, on November 7, 2016, Brown filed a pre-sentence motion to withdraw his plea and a hearing was held on November 15, 2016. At this hearing Brown unequivocally stated that he "don't want to plead to" the charges he pled guilty to "because it's not honestly what I was trying to do." N.T. 11/15/16 at 4. In addition, Brown stated that he "won't feel right accepting because that's not what I did intentionally or attempted to do." Id. at 5.

54.   In response to Brown's assertions, the Commonwealth indicated that it "sounds like [Brown] is now claiming he is asserting his innocence or he doesn't want to plead to something that he doesn't think he intended to do." Id. at 6.

55.    In spite of Brown's clear assertion of innocence, on November 15, 2016, the state court denied this Pre-sentence request. See, T.C.O. dated 11/15/16.

56.    The record before this Honorable Court clearly demonstrates that this claim was raised, and thus preserved in the state court. Despite the liberal standard which would have been accorded to Brown had this claim been raised on direct review, this claim was not raised by any attorney during any of the proceedings in this matter.

57.    Under the 14th Amendment to the United States Constitution, the procedural due process protections are less stringent than for purposes of either a criminal trial or direct appeal. Nevertheless, due process requires that the post-conviction process be fundamentally fair. See, Commonwealth v. Haag, 809 A.2d 271, 283 (Pa. 2002). Therefore, petitioners must be given the opportunity for the presentation of claims at a meaningful time and in a meaningful manner. See, Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982).

58.    According to Pennsylvania's PCRA process, indigent petitioners may apply for the assistance of counsel for purposes of their first PCRA petition. During the filing of a first PCRA petition, the right to counsel is absolute as the State Supreme Court has concluded that a petitioner need not establish that the petition is timely before he or she is entitled to the appointment of counsel. See e.g., Commonwealth v. Smith, 818 A.2d 494 (Pa. 2003). To this end, it can be assumed that the PCRA court will appoint counsel, i.e., counsel that can and will raise potentially meritorious claims. In this same vein, while the performance of PCRA counsel is not

necessarily scrutinized under the 6th Amendment, the performance of counsel must comply with some minimum norms, which includes effective assistance during the collateral review stage. See, Commonwealth v. Albrecht, 720 A.2d 693, 699-700 (Pa. 1998); Commonwealth v. Purcell, 724 A.2d 293, 303 (Pa. 1999)(there is a right to effective assistance of counsel during the PCRA proceeding).

59.    Under state law, Brown has an absolute and rule-based right to effective assistance of counsel during the collateral review proceedings. Albrecht, supra., Purcell, supra. See also, Pa. R. Crim. P. 904(c).

60.    Brown concedes that this claim is procedurally defaulted. Nevertheless, the United States Supreme Court has carved out a "narrow exception" to procedural default. In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court held that prisoners may bring their claims of ineffective assistance of trial counsel via habeas corpus if in their state collateral proceeding that had "no counsel or counsel in that proceeding was ineffective." Martinez, 566 U.S. at 17. To qualify for Martinez's exception, a habeas petitioner must show three (3) things: (1) that the procedural default was caused by either the lack of counsel or ineffective counsel on post-conviction review; (2) that this lack or ineffectiveness of counsel was in the first collateral proceeding when the claim could have been heard; and (3) that the underlying claim of ineffective assistance of trial counsel is "substantial," Cox v. Horn, 757 F.3d 113, 119 (3d Cir. 2014)(quoting, Martinez, 566 U.S. at 14); see also, Richardson v. Superintendent Coal Twp. SCI., 905 F.3d 750, 762 (3d Cir. 2018).

61.    Based on the above standards, the applicable facts that are

substantiated by the state court record, Brown argues that PCRA counsel was ineffective when counsel failed to raise in the initial collateral review petition that plea, post-sentencing and or direct review counsel were ineffective for failing to raise on direct review that the state court erred when it denied his post-sentence request to withdraw his guilty plea.

62.    Per Forbes and Randolph, this claim is substantial and of arguable merit because Brown did indeed file a pre-sentence motion to withdraw his plea. Accordingly, had this claim been raised on direct review it would have been viewed liberally and not subject to higher scrutiny which renders his ability to withdraw his plea seemingly impossible. Had this claim been raised on direct review, there is a reasonable probability that the outcome of the proceedings would have been different. Namely, the state court would have been reversed. See, Commonwealth v. Flick, 802 A.2d 620 (Pa. Super. 2002). Evident by the state court's determinations, Brown was prejudiced by collateral counsel's deficient performance. That is to say, the state court reviewed Brown's attempt to withdraw his plea under a manifest injustice standard as opposed to a liberal one. Brown is entitled to relief. See, Commonwealth v. Rosado, 150 A.3d 425 (Pa. 2016)(counsel errors that forego appellate review amounts to a constructive denial of counsel).


### GROUND FOUR


PCRA COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE IN THE INITIAL COLLATERAL REVIEW PETITION THAT PLEA COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT WHEN THE STATE COURT IMPOSED FINES AS THIS INCLUSION VIOLATED THE TERMS OF THE CONTRACTUAL AGREEMENT OF THE PLEA.


63.    When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Plea agreements are analyzed under contract law standards. United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998). As such, the Court determines whether the government's conduct is inconsistent with what the defendant reasonably understood. United States v. Davenport, 775 F.3d 605, 609 (3d Cir. 2015). In light of the governments bargaining power and the fact that a defendant waives his constitutional rights, the defendant receives the benefit of the doubt. Nolan-Cooper, 155 F.3d at 236.

64.    On September 2, 2016, Brown entered a guilty plea to the following offenses: Criminal Attempt to Commit Manslaughter of a Law Enforcement Officer in the First Degree under 18 Pa. C.S. §§ 901, 2507(c)(1)(ii); Arson under 18 Pa. C.S. § 3301 (a)(1)(ii); and Recklessly Endangering Another Person under 18 Pa. C.S. § 2705. The terms of the contract were set on the record. See, N.T. 9/2/16. However, during the guilty plea proceeding, there was no reference made to fines being a part of the plea agreement. In addition, the written plea colloquy was void of this procedural requirement. See, Guilty Plea Colloquy dated 9/2/16. See also, Pa.R.Crim.P. 590(5) ("Is the defendant aware of the permissible range of sentences and/or fines for the offense charged?").

65.    On December 1, 2016, when Brown appeared for sentencing, the state court imposed fines which consisted of $1,700. See, N.T. 12/1/16. When the state court imposed fines, plea counsel did not object.

66.    In Commonwealth v. Rush, 909 A.2d 805 (Pa. Super. 2006), the defendant "was made fully aware, prior to entering the plea, that the court would impose a specific amount of restitution upon acceptance of the plea,

and whereby the defendant agreed to accept restitution." Rush, 909 A.2d at 808. In concluding that Rush's sentence was legal and that his plea was voluntary and intelligently entered, the court noted that the defendant "had a full understanding of the nature and consequences of his plea and ... knowingly and voluntarily decided to enter the plea which encompassed an agreement to pay $28,450" as such was "stipulated in the written plea petition as well as on the record orally at the plea hearing." Id.

67.    Instantly, the state court did not make Brown fully aware, as part of his plea, that it would impose fines as part of his sentence. Under such circumstances where there is nothing in the record indicating that Brown was apprised of the fact that fines would be imposed, the voluntary, knowing and intelligent nature of Brown's plea is questionable. See, Commonwealth v. Daniels, 656 A.2d 539 (Pa. Super. 1995)(vacating the judgment of sentence where the defendant pleaded guilty because the fine in which the court imposed was not part of the plea agreement); see also, Commonwealth v. Rotola, 173 A.3d 831 (Pa. Super. 2017).

68.    Brown concedes that this claim is procedurally defaulted, and thus argues that such is reviewable under Martinez. Per Daniels and Rotola this claim is substantial and of arguable merit. That is to say, Brown's plea was involuntary and not intelligently entered as he was not fully aware, as part of his plea, that fines would be imposed. As this claim is of arguable merit, no reasonable basis exists as to why PCRA counsel failed to raise this claim in the initial collateral review petition. Since Brown's plea was not intelligently entered, he was prejudiced by counsel's deficient performance. Brown is entitled to habeas corpus relief. See, Commonwealth v. Flanagan, 854 A.2d 489 (Pa. 2004); Commonwealth v. Persinger, 615 A.2d 1305 (Pa. 1992); Commonwealth v. Hickman, 799 A.2d 136 (Pa. Super. 2002).

<u>CONCLUSION</u>

Based upon the facts and the clearly established law, this Court is authorized to grant habeas corpus relief.

Date: August, 13 2022

Respectfully Submitted,

Jordan Brown, MU 2046
301 Institution Drive
Bellefonte, PA 16823

I declare under the penalties of perjury that the statements made in the foregoing are true and correct to the best of my knowledge and belief, executed at SCI Benner Township, Bellefonte, PA 16823.

Date: August, 13 2022

Jordan Brown