IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JORDON BROWN,                          :        Civil No. 3:22-cv-1301
                                       :
              Petitioner               :        (Judge Mariani)
                                       :
       v.                              :
                                       :
MORRIS HOUSER, et al.,                 :
                                       :
              Respondents              :

## MEMORANDUM

Petitioner Jordon Brown ("Brown") filed the instant petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 (Doc. 1), seeking relief from an aggregate sentence of 18 to

36 years' imprisonment entered in the Court of Common Pleas of Huntingdon County,

Pennsylvania, on December 1, 2016, in criminal case CP-31-CR-0000577-2015, for

attempted manslaughter of a law enforcement officer and arson (placing a person in danger

of death or bodily injury). The petition is ripe for disposition. For the reasons discussed

below, the Court will deny the petition.

## I.    *State Court Factual Background & Procedural History*[1]

Throughout his state court proceedings, Brown was represented by several

attorneys. Nicholas Newfield, Esquire, was appointed to represent Brown from the

---

[1]    A federal habeas court may take judicial notice of state court records. *Minney v. Winstead*, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court takes judicial notice of the publicly available dockets in the Court of Common Pleas of Huntingdon County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

preliminary arraignment through post-sentence motions. *See Commonwealth v. Brown*, 2021 WL 7541231, at *2 (Pa. Super. 2021). Greg Davidson, Esquire, assumed representation of Brown for his direct appeal to the Pennsylvania Superior Court. *See id.* Attorney Davidson withdrew and Lance Marshall, Esquire, was appointed to represent Brown for purposes of his petition for allowance of appeal to the Supreme Court of Pennsylvania. *See id.* Attorney Marshall also filed Brown's initial Post Conviction Relief Act ("PCRA") petition. *See id.* Brown subsequently retained Helen A. Stolinas, Esquire, as PCRA counsel, and Attorney Stolinas filed an amended PCRA petition, and an addendum to the amended PCRA petition. *See id.*

Below is a comprehensive summary of the facts and procedural history of Brown's state court case.

On November 28, 2015, Brown engaged in a drug-fueled, paranoid, and quasi-suicidal episode after a fight with his girlfriend. *See id.* at *2-4. Brown set fire to her residence, fired a shotgun at two Pennsylvania State Police troopers who were responding to his girlfriend's call for help, exited the residence, and got into an armed confrontation with the troopers. *See id.* Brown eventually complied with the troopers' commands when his brother convinced him to put the gun down. *See id.*

On September 2, 2016, Brown pled guilty to attempted manslaughter of a law enforcement officer, arson (danger of death or bodily injury), and recklessly endangering another person. *Commonwealth v. Brown*, No. CP-31-CR-0000577-2015 (Pa. Ct. Com. Pl.

2

Huntingdon Cnty.). On December 1, 2016, the trial court sentenced Brown to an aggregate sentence of 18 to 36 years of imprisonment for attempted manslaughter of a law enforcement officer and arson, and $1,700 in fines. *Id.* The trial court did not impose a penalty for the reckless endangerment offense.

Brown filed a direct appeal challenging the discretionary aspects of his sentence. *See Commonwealth v. Brown*, No. 719 MDA 2017 (Pa. Super. 2017). On November 30, 2017, the Pennsylvania Superior Court affirmed the judgment of sentence. *Commonwealth v. Brown*, 181 A.3d 459, 2017 WL 5951473 (Pa. Super. 2017), *appeal denied*, 195 A.3d 566 (Pa. 2018). Brown filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on October 11, 2018. *Commonwealth v. Brown*, 368 MAL 2018, 195 A.3d 566 (Pa. 2018).

On October 11, 2019, appointed counsel filed a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act, 42 PA. CONS. STAT. §§ 9541-46. *See Commonwealth v. Brown*, No. 242 MDA 2021, 2022 WL 792169, at *1 (Pa. Super. 2022). Subsequently, retained PCRA counsel filed an amended petition on December 23, 2019. *See id.* Following two hearings, the PCRA court denied Brown's amended PCRA petition on January 22, 2021. *See id.* Brown filed a notice of appeal with the Pennsylvania Superior Court. *Commonwealth v. Brown*, No. 242 MDA 2021 (Pa. Super.). On March 16, 2022, the Superior Court affirmed the order of the PCRA court and found that Brown was not entitled to any post-conviction relief. *Commonwealth v. Brown*, 2022 WL 792169. Brown sought re-

3

argument, which was denied on May 26, 2022. *See Commonwealth v. Brown*, No. 242
MDA 2021 (Pa. Super.).

Brown filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254. (Doc. 1).

## II.   Habeas Claims Presented for Federal Review

Brown seeks federal review of the following issues:

- Ground One: Plea counsel was ineffective for failing to ensure that Brown's prior
  record score was correctly stated in the paperwork used at sentencing.

- Ground Two: Plea counsel was ineffective for failing to object when Brown pled guilty
  to a "non-viable" offense.

- Ground Three: Direct appellate counsel was ineffective for failing to appeal the trial
  court's denial of his request to withdraw his guilty plea.

- Ground Four: Plea counsel failed to advise Brown that fines would be a part of the
  plea agreement and that counsel's failure to so advise resulted in an unknowing and
  involuntary plea.

(Docs. 1, 2).

## III.   Legal Standards

### A.   Exhaustion and Procedural Default

Before the federal court can consider the merits of a habeas claim, a petitioner must
comply with the exhaustion requirement of section 2254(b), which requires a petitioner to
"give the state courts one full opportunity to resolve any constitutional issues by invoking
one complete round of the State's established appellate review process." *O'Sullivan v.
Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the

state courts the same factual and legal theory supporting the claim. *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). It also requires the petitioner to preserve each claim at the state appellate level. *See Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing *O'Sullivan*, 526 U.S. at 844-45). The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction

counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at…trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

### B.   Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner

"must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979).  "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)(3)).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief.  *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

### C.   Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This right to effective

assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656

(3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing

whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466

U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell

below an objective standard of reasonableness" and (2) that such defective performance

caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly

deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will

not be second-guessed by post-hoc determinations that a different trial strategy would have

fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446

U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless

argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d

Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable

probability that, but for counsel's deficient performance, the outcome of the proceeding

would have been different.  *See Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different.  *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test.  *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one.  *Strickland*, 466 U.S. at 697.

IV.    **Discussion**

   A.    **Ground One—Plea counsel was ineffective for failing to ensure that Brown's prior record score was correct**

Brown first alleges that plea counsel was ineffective for failing to ensure that his prior record score was correctly stated in the paperwork used at sentencing.  In his amended PCRA petition, Brown argued that both trial counsel and appellate counsel were ineffective for failing to challenge the miscalculation of his prior record score.  The PCRA court ultimately found that Brown was not entitled to relief on this claim and reasoned as follows:

> Petitioner's strongest argument regarding sentencing is that the Sentencing Guidelines were misapplied by the Court, resulting in the wrong point of departure for the non-guidelines sentence imposed.  As noted…above, the parties agree that Petitioner's prior record score ["PRS"] was miscalculated,

and that it should have been a 2, rather than the 3 shown on the sentencing worksheets.

The sentencing sheet for the attempted manslaughter charge calculated the standard range sentence as 96-114 months, and the aggravated range sentence as 108-120 months.  Petitioner argues that with a PRS of 2, the standard range sentence should have been 90-108 months, and the aggravated range sentence 102-120 months.  For the arson charge, the sentencing sheet calculated the standard range sentence as 30-42 months, and the aggravated range sentence as 42-54 months.  Petitioner argues that with a PRS of 2, the standard range should have been 24-36 months, and the aggravated range 36-48 months.

Comparing the above to the sentence Petitioner actually received, the differences are negligible at best.  The sentence on the attempted manslaughter charge was 120-240 months, putting it within the aggravated range of the Sentencing Guidelines regardless of which PRS is used.  On the arson charge, the sentence was 96-192 months.  This is 42 months outside of the aggravated range when calculated using a PRS of 3, and 48 months outside of the aggravated range when calculated using a PRS of 2—a difference of six months.

Assuming, without expressly finding, that this Court's use of a sentencing sheet calculated using the wrong PRS was an abuse of discretion, and that Petitioner's calculations using a PRS of 2 are correct, it is beyond a reasonable doubt that the miscalculation was harmless.  Setting aside (for now) Petitioner's arguments regarding the propriety of the Court's determination to sentence in the aggravated range on the attempted manslaughter charge, and beyond the aggravated range on the arson charge, the Court made clear on the record that its sentence was not based on some mathematical formula that expanded upon the Sentencing Guidelines.  Rather, because of the severity of the aggravating factors present and the need for the protection of the public, the Court determined that a sentence consistent with the cap agreed to between Petitioner and the Commonwealth was appropriate.  The implicit argument that a six-month shorter starting point for determining the upward deviation from the Sentencing Guidelines would have changed the outcome is patently incredible.

***

Petitioner does have potentially viable claims in regard to Attorney Newfield's failure to object to the calculation of his prior record score and failure to place the specific issues he noticed in regard to the Sentencing Guidelines on the record at sentencing. As these issues affected the starting point for the Court's sentencing determinations, they do have arguable merit. However, as discussed at length in the preceding paragraphs, the outcome for Petitioner would not have been different had Attorney Newfield raised these issues at sentencing. Additionally, as discussed above, Attorney Newfield had a reasonable strategic basis for not hammering away at the possible ranges under the Sentencing Guidelines—it would not form the basis of a strong argument for leniency.

*Commonwealth v. Brown*, 2021 WL 7541231, at *21-22, 26 (footnotes omitted).

Despite the miscalculation of Brown's prior record score, the PCRA court concluded that any resultant error was harmless and that plea counsel's failure to object to the calculation of his prior record score would not have changed the outcome. In his appeal to the Superior Court, Brown argued that the PCRA court erred in finding that his ineffective assistance claims did not merit relief by holding that he was not prejudiced by any of his prior counsel's errors. (Doc. 16-6, pp. 13-14). The Superior Court rejected Brown's claim and stated the following:

As part of this issue, Brown raises additional alleged shortcomings regarding plea counsel's representations to him during the plea colloquy. *See* Brown's Brief at 34-35. After review, we conclude these claims are either refuted by Brown's answers during the plea colloquy, *Pollard, supra*, or inconsequential when considering the totality of the circumstances surrounding Brown's plea. *Yeomans, supra*. This is especially true, considering the PCRA court's conclusion that plea and appellate counsel provided credible testimony, but Brown's PCRA hearing testimony was unworthy of belief. *See* PCRA Court Opinion, 1/22/21, at 23-25.

*Commonwealth v. Brown*, 2022 WL 792169, at *10 n.5.

Brown's contention that counsel provided ineffective assistance by advising him to enter a guilty plea when his prior record score was miscalculated is without merit.  Although the Commonwealth and Brown stipulated, at the second PCRA hearing, that the sentencing sheet prepared for Brown showed a prior record score of 3 rather than 2, Brown suffered no harm as a result of this error.  Brown was originally charged with sixteen counts: (1) criminal attempt—manslaughter of a law enforcement officer, (2) four counts of aggravated assault (two counts as a felony of the first degree, two counts as a felony of the second degree), (3) two counts of assault on a law enforcement officer, (4) arson with danger of death or bodily injury, (5) arson with intent to destroy an unoccupied building, (6) reckless burning, and (7) six counts of reckless endangerment.  (Doc. 16-16).  As part of the plea agreement, the government agreed to accept a plea as to only three counts—attempted manslaughter of a law enforcement officer, arson, and reckless endangerment—and to dismiss the remaining counts.  (Doc. 16-13, pp. 17-18).  Notably, the most serious charges—two counts of assault on a law enforcement officer—each have a statutory maximum sentence of 40 years, which could result in 80 years, if the sentences were ordered to run consecutively.  18 Pa.C.S. § 2702.1(b).  Based on his plea to three counts, Brown received a cumulative sentence of 18 to 36 years' imprisonment.

The PCRA court concluded that Brown suffered harmless error as a result of his miscalculated prior record score.  *Commonwealth v. Brown*, 2021 WL 7541231, at *22.  As a result of the plea agreement, Brown had several charges nolle prossed and was

sentenced to a much lower term of imprisonment.  Counsel's error with regard to Brown's prior record score does not undermine counsel's advice to plead guilty, because Brown received a favorable sentence as a result of the guilty plea.  The PCRA court concluded that Brown's argument that "a six-month shorter starting point for determining the upward deviation from the Sentencing Guidelines would have changed the outcome is patently incredible." *Commonwealth v. Brown*, 2021 WL 7541231, at *22.  Given the strategic reasons for Brown's guilty plea, the strong case against him, the severity of the aggravating factors, the need for the protection of the public, and the lenient sentence he received, Brown has failed to establish a reasonable probability that, had he known his correct prior record score, he would not have pled guilty.

The Court finds that the state court correctly applied the standards established in *Strickland* and reasonably determined that Brown's plea counsel was not ineffective in his representation of him.  The Court finds that Brown has not demonstrated that the state court decisions resulted in an outcome that cannot be reasonably justified, that the law was applied unreasonably, or that the decisions were based on an unreasonable application of the facts.  Accordingly, habeas relief will be denied on this ground.

**B. Ground Two—Plea counsel was ineffective for failing to object when Brown pled guilty to a "non-viable" offense**

Brown next argues that plea counsel was ineffective for failing to object when he pled guilty to a "non-viable" offense.  In affirming the PCRA court's conclusion, the Superior Court found no merit to this claim and set forth the following extensive analysis:

In his first issue, Brown asserts that plea counsel was ineffective for advising him to enter a plea of guilty to attempted manslaughter of a law enforcement officer. Brown claims that this was a "non-viable charge," because it required him to possess "the specific intent to kill the Troopers negligently or accidently." *Id.* at 11. According to Brown, "[t]he criminal attempt, which requires a specific intent, was not viable under the facts and circumstances of the case." *Id.*

The PCRA court found no merit to this claim because the crime to which Brown pled guilty is a viable charge in Pennsylvania. The court first recognized the parameters of Brown's claim:

> [Brown's] argument is based on the interplay between 18 Pa.C.S. § 901, which establishes the *mens rea* necessary to find a defendant guilty of attempting to commit an offense, and the elements of the offense of Manslaughter of a Law Enforcement Officer in the First Degree set forth in 18 Pa.C.S. § 2507(c). However, his argument ultimately fails, as it ignores both controlling caselaw and basic tenets of statutory interpretation.

PCRA Court Opinion, 1/22/21, at 25-26.

The PCRA court then recognized that criminal attempt requires specific intent and that its application is limited to crimes which also require a specific intent:

> Under § 901(a), "[a] person commits an attempt when, *with intent to commit a specific crime*, he does any act which constitutes a substantial step toward the commission of that crime." (Emphasis added). This necessarily limits liability for criminal attempt to those offense requiring a *mens rea* of specific intent, because a person cannot intentionally commit an unintentional offense (such as one requiring a *mens rea* of recklessness or gross negligence). *See Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. 2004) (attempted second and third degree murder are not viable offenses under Pennsylvania law, as such offenses only occur where the victim's death is the unintentional result of a criminal act; § 901 requires that the Commonwealth prove the defendant had the specific intent to kill the victim) ([citations omitted]).

*Id.* at 26.

The court noted the elements of the underlying offense, which is part of a criminal statute that provides varying degrees of crimes for the criminal homicide of a law enforcement officer, including murder and manslaughter. That statute reads, in pertinent part, as follows:

> § 2507. Criminal homicide of law enforcement officer
>
> ***
>
> (c) Manslaughter of a law enforcement officer in the first degree.—A person commits a felony in the first degree who does any of the following:
>
> (1) Without lawful justification kills a law enforcement officer while in the performance of duty and with knowledge that the victim was a law enforcement officer, if at the time of the killing:
>
> (i) the person is acting under a sudden and intense passion resulting from serious provocation by the victim killed; or
>
> (ii) the person is acting under a sudden and intense passion resulting from serious provocation by another individual whom the actor endeavors to kill, but the person negligently or accidentally causes the death of the victim.
>
> ***

18 Pa.C.S.A. § 2507(c).

The PCRA court then provided the following analysis of Brown's claim:

> The criminal information charged [Brown] with, and he ultimately pleaded guilty to and was sentenced for, committing the offense under § 2507(c)(1)(ii).  [PCRA] counsel now looks to the "negligently or accidentally causes the death of the victim" portion of this subsection to argue that Manslaughter of a Law Enforcement Officer in the First Degree is not a specific intent offense, and that therefore [Brown's] sentence for attempting to commit this offense is illegal.  To

say that such an interpretation of § 2507(c)(1)(ii) is incorrect does not even begin to encompass the magnitude of its erroneousness.

[Brown's] argument plucks one phrase from § 2507(c) and attempts to use it to negate the entirety of the remainder of the statute. This cannot be done. Words of a statute must be interpreted in context, they cannot be viewed in isolation.

Looking at the larger context, § 2507, titled "Criminal Homicide of Law Enforcement Officer," was enacted in 2008. Subsections (a) and (b) address murder of a law enforcement officer, and [subsections] (c) and (d) address manslaughter. With respect to manslaughter, it is clear that the General Assembly intended subsection (c) to address situations in which the offense otherwise would be Voluntary Manslaughter under 18 Pa.C.S. § 2503, and subsection (d) to address situations in which the offense would otherwise be Involuntary Manslaughter under 18 Pa.C.S. § 2504. Both of these statutes were in effect well before 2008, and the only differences between the elements of the offenses set forth in § 2507(c) and (d) and the elements of the offenses set forth in §§ 2503 and 2504 are that in each instance, the defendant killed "a law enforcement officer in the performance of duty" and knew at the time the victim was a law enforcement officer.

PCRA Court Opinion, 1/22/21, at 27-28 (citations and footnotes omitted).

Ultimately, the PCRA court explained why Brown's claim lacked merit:

With the understanding that Manslaughter of a Law Enforcement Officer in the First Degree is essentially Voluntary Manslaughter, but with a law enforcement officer as the victim, it is relatively easy to dispense of [Brown's] claim. It has been clear that Attempted Voluntary Manslaughter is a viable offense under the laws of the Commonwealth since at least 1983. *See Commonwealth v. Garner*, 461 A.2d 302, 303-304 (Pa. Super. 1983) (affirming the trial court's finding that Attempted Voluntary Manslaughter exists as an offense in the Commonwealth, since Voluntary Manslaughter "is an intentional killing, but without the malice required to raise the degree of culpability to that of murder."; *see also Commonwealth v. Burns*, 765 A.2d 1144, 1151 (Pa. Super. 2000) (upholding the defendant's

conviction and aggravated range sentence for Attempted Voluntary
Manslaughter under 18 Pa.C.S. §§ 901(a), 2503(a)(1)).

What [Brown's] focus on the "negligently or accidentally" portion of §
2507(c)(1)(ii) ignores is that this subsection addresses transferred
intent situations.  The classic transferred intent example is that A
intends to shoot B, but misses, and hits and kills C instead.  The level
of intent A possessed with respect to attempting to shoot B is
transferred to the killing of C, so if A fired his shot intending to kill B
under circumstances that would constitute voluntary manslaughter,
he is guilty of voluntary manslaughter in regard to his killing of C.
This is where the "negligently or accidentally" language comes into
play, because A always intend to commit voluntary manslaughter, he
simply killed the wrong individual.  Had A's intent in killing C had
been anything other than negligence or accident, there would be no
need for transferred intent, because by definition, he would have fired
his shot intending to kill C in the first place.  This is thus a very
different situation than if the Commonwealth had charged [Brown]
with Attempted Manslaughter of a Law Enforcement Officer in the
Second Degree, which likely does not constitute a viable offense.

*Id.* at 29-30 (footnotes omitted).

Our review of the record and pertinent case law supports the PCRA court's
conclusion.  *See, e.g.*, *Commonwealth v. Tolbert*, 670 A.2d 1172, 1179-80
(Pa. Super. 1995) (defining voluntary manslaughter as the intentional killing of
another without malice but in sudden heat of passion brought on by legal
provocation).

Brown's claims to the contrary are unavailing.  He first maintains the same
argument regarding the non-viability of the offense that the PCRA court
debunks.  *See* Brown's Brief at 17-18.  Moreover, Brown's answers during the
guilty plea colloquy refute his claims that he was not "instructed to the *mens
rea* of the offense to which he entered a plea of guilty," and that "neither [plea]
counsel nor the [trial] court adequately explained the definition of the offense"
to him.  Brown's Brief at 18.4 *Pollard, supra*.  Finally, because the offense to
which he pled guilty is viable, his illegal sentence claim fails.

*Commonwealth v. Brown*, 2022 WL 792169, at *5-6 (footnotes omitted).

Before the Superior Court, Brown challenged, and the Superior Court addressed, whether attempted manslaughter of a law enforcement officer is a viable offense. A federal habeas court is bound by state court determinations of state law and has no authority to review it. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law…binds a federal court sitting in habeas corpus"). Thus, this Court does not disturb the state court's determination that attempted manslaughter of a law enforcement officer is a viable offense under Pennsylvania law. Because the crime is a viable offense, this Court agrees with the Superior Court that plea counsel cannot be found ineffective under *Strickland* for failing to raise a meritless claim. Brown therefore fails on the first prong of the *Strickland* analysis. The state courts' adjudication of this claim was a reasonable determination of the facts in light of the evidence presented in the state court proceedings. Habeas relief is not warranted on this claim.

**C.     Ground Three—Direct appellate counsel was ineffective for failing to appeal the trial court's denial of Brown's request to withdraw his guilty plea**

Brown next alleges that direct appellate counsel was ineffective for failing to appeal the trial court's denial of his request to withdraw his guilty plea. The record reveals that during his state court proceedings, Brown requested that plea counsel file a motion to withdraw his guilty plea. The motion was denied. (Doc. 16-11). Brown argues that direct appeal counsel was ineffective for failing to raise the claim on appeal. Brown acknowledges

that this claim is procedurally defaulted.  (Doc. 2, p. 17, ¶ 60).  He argues that the default

should be excused because PCRA counsel was ineffective for failing to raise the claim.

(*Id.*).

The Court first notes that the time for filing both a direct appeal and a PCRA petition

has expired, and the state procedural rules prohibit Brown from bringing these claims in

state court.  *See* PA. R. APP. P. 903(a) (time for filing a direct appeal); 42 PA. CONS. STAT.

§ 9545(b)(1) (PCRA statute of limitations); 42 PA. CONS. STAT. § 9544(b) (PCRA waiver

rule).  Because there are no longer any state remedies available to Brown, the claims are

procedurally defaulted, and review of the claims is barred.  *Coleman*, 501 U.S. at 731-32;

*Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

However, Brown invokes *Martinez* to excuse the default.  This argument fails

because an allegation of PCRA counsel error cannot provide a basis to excuse the

procedural default of a claim of *appellate* counsel ineffectiveness.  *Martinez* recognized a

narrow exception to the general rule that attorney errors in state collateral proceedings do

not establish cause to excuse a procedural default.  *Martinez*, 566 U.S. 1.  Specifically,

*Martinez* held that "attorney error in collateral proceedings may sometimes establish cause

for the default of a claim of ineffective assistance of *trial* counsel."  *Norris v. Brooks*, 794

F.3d 401, 404 (3d Cir. 2015) (emphasis added).  This narrow exception does not provide a

basis to excuse the default of a claim that *appellate* counsel provided ineffective assistance.

*Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017).  Brown argues that direct appeal counsel was

ineffective, and an allegation of PCRA counsel error cannot provide a basis to excuse the procedural default of a claim of *appellate* counsel ineffectiveness.  *See Martinez* 566 U.S. at 9 (holding that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance *at trial*") (emphasis added).  Accordingly, the Court finds that Brown's procedural default should not be excused, and this claim is barred from federal review.

Additionally, Brown is not entitled to habeas relief on this claim to the extent he asserts it as a standalone claim of ineffectiveness of PCRA counsel.  Brown did not have a federal constitutional right to counsel during his PCRA proceeding, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); therefore, he cannot receive habeas relief on a standalone claim that his PCRA counsel was ineffective.  This concept is codified by statute at 28 U.S.C. § 2254(i), which expressly provides that "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254."  *See also Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.").  Thus, any potential standalone ineffectiveness of PCRA counsel claim is not cognizable as a basis for habeas relief.

**D.      Ground Four—Plea counsel failed to advise Brown that fines would be part of the plea agreement**

Lastly, Brown argues that plea counsel failed to advise him that fines would be part of the plea agreement and that counsel's failure to do so resulted in an unknowing and involuntary plea.  In his PCRA appeal, Brown argued that he was prejudiced by counsel's failure to object to a deficient plea colloquy.  (Doc. 16-6, p. 13).  Specifically, he argued that the record of the plea colloquy does not reflect that Brown was advised of the potential fines or that there would be any aspect of the sentence other than the jail time, and that counsel failed to object when the court later imposed fines against Brown.  (*Id.*).  He thus argues that his plea was not entered into knowingly and intelligently.  (*Id.*).  The Superior Court rejected Brown's ineffective assistance of counsel claims and concluded that plea counsel's alleged deficiencies were "inconsequential."  *Commonwealth v. Brown*, 2022 WL 792169, at *10 n.5.

As stated, under *Strickland*, to succeed on an ineffective assistance claim, Brown must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  The Court begins with the prejudice prong.

The guilty plea colloquy does not mention that a fine would be imposed as part of the sentence.  (Doc. 16-10).  At the PCRA hearings, plea counsel and Brown both testified, and neither raised nor discussed the issue of the fine and its effect on his guilty plea.  (Doc. 16-13; Doc. 16-14).  Putting aside the adequacy of the guilty plea colloquy, Brown has not

shown that knowledge of a $1,700 fine would have had any impact on his decision to plead guilty. Brown was facing a *de facto* life sentence and plea counsel's strategy was to negotiate a plea deal that would give Brown a chance of not spending the remainder of his life in prison. *See Commonwealth v. Brown*, 2021 WL 7541231, at *6. In order to show prejudice, Brown must demonstrate that but for his plea counsel's purported error, "he would have gone to trial, received a more favorable plea deal, or have been better off pleading guilty without the benefit of a plea agreement." *Boye v. United States*, 810 F. App'x 118, 121 (3d Cir. 2020); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Brown fell far short of his burden to establish prejudice from plea counsel's failure to advise him that fines would be part of the plea agreement. *See Boye*, 810 F. App'x at 121 (holding the petitioner failed to set forth a lower loss calculation "to show that his sentence would have been materially impacted, or that he would have been on stronger plea bargaining grounds"). Brown cannot demonstrate prejudice based on this claim because nothing in the record indicates that he would have abandoned his plea, and faced a *de facto* life sentence, had he been informed of the potential of a $1,700 fine, and he never states that he would have elected to proceed to trial.

The Court next addresses whether plea counsel performed deficiently. The record does not support such a finding. The PCRA court found that Brown's allegations of ineffectiveness of plea counsel had no merit. Regarding the plea colloquy, the PCRA court noted that the court "conducted an extensive oral colloquy on the record, confirming that

Petitioner understood his rights, understood the risks, understood the charges against him (including what the Commonwealth would be required to prove), and that he was satisfied with the assistance and advice he had received from Attorney Newfield." *Commonwealth v. Brown*, 2021 WL 7541231, at *7. The PCRA further court stated, "[r]eview of the record shows that while Attorney Newfield was not perfect, he fought like hell for Petitioner and made reasonable, well-considered strategic choices, leading to what was likely the best possible outcome for Petitioner." *Id.* at *25. The Superior Court affirmed this decision on appeal. Brown failed to show that his plea counsel's error was so serious that he was not functioning at the level guaranteed by the Sixth Amendment.

The state court's decision that plea counsel's "alleged shortcomings" during the plea colloquy were "inconsequential" deficiencies is a reasonable application of *Strickland* and constitutes an objectively reasonable determination of the facts in light of the evidence presented to the state court. *Commonwealth v. Brown*, 2022 WL 792169, at *10 n.5. Brown is not entitled to relief on this ineffective assistance of counsel claim.

V.   **Request for an Evidentiary Hearing**

Brown also requests that the Court hold an evidentiary hearing. (Doc. 1, p. 14). AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances. *See Campbell*, 209 F.3d at 286. 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed

to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(1), (2).  The initial inquiry when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court.  *See* 28 U.S.C. 2254(e)(2); *Williams*, 529 U.S. at 433.  "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams*, 529 U.S. at 433.  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  *Id.* at 437.  When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts."  *Id.* at 435.  In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state

court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing.  *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

Here, the state courts held hearings on Brown's claims.  Brown has not established that there was a failure to develop the factual basis of the claims at the state court level, which eliminates the need for an evidentiary hearing.  The Court will deny Brown's request for a hearing.

## VI.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.  As the Supreme Court has explained,

> "[w]hen the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, a COA should
> issue when the prisoner shows, at least, that jurists of reason would find it
> debatable whether the petition states a valid claim of the denial of a
> constitutional right and that jurists of reason would find it debatable whether
> the district court was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Brown failed to demonstrate that a certificate of appealability should issue.

## VII.    <u>Conclusion</u>

The Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge


Dated: March 28, 2024